UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TERRI P. DODSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACT. NO. 1:19-cv-1004-TFM-B |
| | : | |
| BARCLAYS BANK DELAWARE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Barclays Bank Delaware's *Renewed Motion to Compel Arbitration and Dismiss, or in the Alternative, Compel Arbitration and Stay Proceedings* ("motion to compel arbitration"). Doc. 28, filed February 4, 2020. Barclays Bank Delaware requests the Court dismiss this matter because it claims Plaintiff Terri P. Dodson's claims are subject to binding arbitration, or in the alternative, compel her to arbitrate her claims against Barclays Bank Delaware and enter a stay of these proceedings. *Id.* Having considered the motion, the evidence in support of the motion, the evidence presented at the evidentiary hearing, and the relevant law, the Court finds the motion to compel arbitration is due to be **GRANTED**. Further, Barclays Bank Delaware's alternative request to stay this matter is **GRANTED** and the request to dismiss this matter is **DENIED**.

**I.      JURISDICTION**

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question) since Plaintiff Terri P. Dodson ("Plaintiff") brings claims for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681- through 1681x.

The Court has personal jurisdiction over Barclays Bank Delaware ("Barclays"), because

Plaintiff alleges she is a resident of Alabama and Barclays solicited her to open a credit card account, the act which underpins the claims in this action, and Barclays was served with a summons and the complaint via certified mail. Docs. 1, 7; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-78, 105 S. Ct. 2174, 2181-85, 85 L. Ed. 2d 528 (1985) (explaining the requirements for specific jurisdiction over an out-of-state defendant); *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quoting *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)) ("Personal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process.").

Venue is proper in this Court because Plaintiff alleges a substantial part of the events or omissions that form the basis of her claims occurred in Mobile County, which is within this Court's jurisdiction, and venue is not contested. Doc. 1 ¶¶ 1-26; Doc. 27 ¶¶ 1-26; *see also* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .").

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

Plaintiff originally filed her complaint with this Court on November 19, 2019, in which she brings claims for violations of the FCRA against Barclays; Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and TransUnion, LLC ("TransUnion") (collectively, "Defendants"). Doc. 1. On January 9, 2020, Barclays filed its Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings and memorandum in support. Docs. 19, 19-1. On January 20, 2020, Plaintiff filed her Motion for Leave to File Amended Complaint, within the twenty-one (21) day time limit to amend as a matter

of course, to add a wantonness claim against Barclays and additional facts, which the Court granted. Docs. 25, 26. Plaintiff filed her amended complaint on January 22, 2020, to which Experian and TransUnion each filed their answer. Docs. 29, 30. Plaintiff and Equifax filed a Joint Motion for Dismissal of Claims Against Defendant Equifax Information Services, which the Court granted and dismissed Plaintiff's claims against Equifax. Docs. 44, 45.

On February 4, 2020, Barclays filed its instant Renewed Motion to Compel Arbitration and Dismiss, or in the Alternative, Compel Arbitration and Stay Proceedings and memorandum in support ("motion to compel arbitration"). Docs. 28, 28-1. The Court entered a submission order for Barclays's motion to compel arbitration to which Plaintiff filed her response and Barclays its reply. Docs. 28, 37, 39. The Court set an evidentiary hearing for the motion to compel arbitration, which was conducted on August 3, 2020, to resolve factual disputes as to whether the arbitration agreement is enforceable. Doc. 52.

At the hearing, Barclays called as witnesses Scott Matthai, a Barclays Time Share Operations Lead, and Tim Moore, a member of Barclays's Project Management Team. Mr. Matthai testified about Barclays's cobrand partnership with Wyndham rewards, the Wyndham rewards Visa credit card that is presented at time-share presentations, and the sign-up process for the credit card at those presentations. Mr. Moore testified about Barclays's credit card information processing procedure generally and as it related to Plaintiff. Plaintiff also testified at the hearing about her experience at the time-share presentation, the documents she was presented, and her understanding of those documents.

Barclays's motion to compel arbitration is ripe for review.

B.   **Factual Background**[1]

In Plaintiff's Amended Complaint, she alleges in November 2017, she and her husband vacationed in the Smoky Mountains. Doc. 1 ¶ 8. While on vacation, Plaintiff and her husband attended a seminar at a Wyndham Resort at which a travel-club membership was promoted. *Id.* At the seminar, Plaintiff and her husband made it clear they were not interested in, and could not afford, a travel club membership because they were on a fixed income. *Id.*

Plaintiff and her husband were presented with multiple documents by the Wyndham sales representative. Plaintiff and her husband were presented with a proposal for a travel-club membership, and Plaintiff initialed on the proposal to indicate they declined the proposal. Doc. 58-6 at 2. Plaintiff and her husband were presented another document and the sales representative told them they would receive a free membership for a period of time. Doc. 58-6 at 3. Another document, a "Perks by CLUB WYNDHAM MEMBERSHIP AGREEMENT" ("membership agreement"), that was presented to Plaintiff and her husband indicates the initial annual membership fee was complimentary for a twenty-four (24) month period. *Id.* at 4. In the "DOWN PAYMENT METHOD" section of the membership agreement, a "Y" was placed next to whether a check was attached and an "N" was placed next to whether a credit card was used; however, Plaintiff stated she neither presented, nor intended to present, a check or intended to use a credit card to pay the membership fee. *Id.* at 5. Further, the membership agreement indicates the "Amount Financed" was zero dollars, which Plaintiff stated indicated her intent not to pay for a membership. *Id.* at 5. The sales representative also presented Plaintiff with a "Wyndham Rewards Visa Card Data Collection for Application document," "Acknowledgement and Consent Form,"

---

[1] The Court's Factual Background is based on Plaintiff's Amended Complaint, and her uncontested testimony and the evidence introduced at the August 3, 2020 hearing.

and a "Barclaycard Response Acknowledgement," all of which Plaintiff completed with the understanding that the documents would not be submitted until she authorized those documents to be processed. Docs. 58-3 at 2, 58-4 at 2, 58-5 at 2.

In October 2018, Plaintiff received a collection letter from Barclays's debt-collection law firm, in which there was a demand for an outstanding Barclays credit-card balance of $3,786.84, the first instance when she became aware of the debt. Docs. 1 ¶ 9, 58-7 at 2. Plaintiff immediately contacted the debt collector to dispute the debt. Doc. 1 ¶ 9. Plaintiff was informed by the debt collector the account was opened during, or just after, the November 2017 travel-club-membership seminar and the charge was a travel-club membership fee. *Id.* Plaintiff informed the debt collector she never agreed to purchase a membership, and she was directed to contact Barclays's account-fraud office. *Id.*

Plaintiff contacted Barclays's account-fraud office to dispute the charge, and the representative with whom she spoke directed her to provide a written dispute and supporting documentation. *Id.* ¶ 10. Plaintiff sent a written dispute and supporting documentation to Barclays and the Barclays's debt collector, which were dated October 29, 2018. *Id.*; Docs. 58-8 at 2-3, 58-9 at 2. Plaintiff contacted Barclays's account-fraud office in November 2018, and she was informed her fraud claim was denied. Doc. 1 ¶ 11. Plaintiff did not receive written notice of the outcome of her account-fraud claim. *Id.*

In December 2018, Plaintiff received another collection letter from Barclays's debt collector. *Id.* ¶ 12; Doc. 58-10 at 2. Plaintiff called the debt collector to dispute the charge, could not reach a representative, and left messages with the debt collector's voice-messaging system. Doc. 1 ¶ 12.

On February 21, 2019, Plaintiff was served with a collection suit; Barclays had sued her in

Small Claims Court in Mobile County for the outstanding credit-card-account debt. *Id.*; Doc. 58-11 at 2-3. On February 27, 2019, Plaintiff filed an Answer in the collection suit in which she denied she owed the debt. Docs. 1 ¶ 14, 58-12 at 2. The collection action was tried, the court found in Ms. Dodson's favor, and a judgment was entered in her favor on July 3, 2019. Docs. 1 ¶ 14, 58-13 at 2.

### III.   STANDARD OF REVIEW

In 1925, Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006), and to declare a "'national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 983, 169 L. Ed. 2d 917 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1 (1984)). Three sections of the FAA play particularly important roles in achieving that purpose. 9 U.S.C. § 2 – the "primary substantive provision" of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) – provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable. 9 U.S.C. § 3 directs courts to stay their proceedings in any case raising a dispute on an issue referable to arbitration. And 9 U.S.C. § 4 "authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with [an] arbitration agreement." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987) (quoting 9 U.S.C. § 4).

As these provisions embody the "liberal federal policy favoring arbitration agreements," *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted), "doubts concerning the *scope* of arbitrable issues should be resolved in favor or arbitration." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (emphasis added). This "presumption," however, "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* (citation omitted).

When . . . a party moves a district court to compel arbitration under the FAA, the court must first determine whether "the making of the agreement for arbitration or the failure to comply therewith is . . . in issue." 9 U.S.C. § 4. If, under a "summary judgment-like standard," the district court concludes that there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Bazemore*, 827 F.3d at 1333 (citation and quotation marks omitted). If, on the other hand, the making of the agreement is in issue, "the court

> shall proceed summarily to the trial thereof." 9 U.S.C. § 4.
>
> As in a traditional summary judgment motion, an examination of substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)). Thus, just as "state law generally governs whether an enforceable contract exists," state law generally governs whether an enforceable "agreement to arbitrate exists" as well. *Caley*, 428 F.3d at 1368. To prove the existence of a contract under Alabama law, the party seeking to enforce the contract must prove by a preponderance of the evidence: "an offer[,] an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

*Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1345-46 (11th Cir. 2017) (footnote omitted).

The Court will view the evidence in the light most favorable to Plaintiff. *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)).

## IV.   DISCUSSION AND ANALYSIS

The Court will first address whether an arbitration agreement exists and then address Plaintiff's challenges to the agreement.

**A.   Whether an Arbitration Agreement Exists**

The issue of whether an arbitration agreement exists is determined by state contract law. *Caley*, 428 F.3d at 1368. Under Alabama law, a party seeking to compel arbitration has the burden of proving: (1) "the existence of a contract calling for arbitration" and (2) proof that the underlying contract "evidences a transaction affecting interstate commerce." *Kenworth of Birmingham, Inc. v. Langley*, 828 So. 2d 288, 290 (Ala. 2002) (citing *TranSouth Fin. Corp. v. Bell*, 739 So. 2d 1110, 1114 (Ala. 1999)). "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or

does not apply to the dispute in question." *Id.* (quoting *Jim Burke Auto., Inc. v. Beavers*, 674 So. 2d 1260, 1265 n.1 (Ala. 1995)).

As to the existence of a contract that contains an arbitration agreement, Barclays submitted the "Wyndham Rewards Visa Card Data Collection for Application document", "Acknowledgement and Consent Form," and a "Barclaycard Response Acknowledgement" form, all of which Plaintiff completed. Docs. 58-3 at 2, 58-4 at 2, 58-5 at 2. On the "Barclaycard Response Acknowledgement" form, Plaintiff acknowledged she initialed next to the statement "I acknowledge that I received the Cardmember Agreement from the Resort Representative and agree to those terms," and Plaintiff acknowledged she must have received the Cardmember Agreement since she initialed next to the statement. *See* Doc. 58-4 at 2. The Cardmember Agreement reads, "By signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement." Doc. 58-2 at 2. The "Arbitration" section of the Cardmember Agreement states as follows:

> At the election of either you or us, any claim, dispute or controversy ("Claim") by either you or us against the other, arising from or relating in any way to this Agreement or your Account, or their establishment, or any transaction or activity on your Account, including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as otherwise specifically provided in this Agreement) Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, shall be resolved exclusively by arbitration.

*Id.* at 10-12.

As to whether the underlying contract evidences a transaction affecting interstate commerce, Barclays asserts Plaintiff's claims are based on a credit-card account that was opened by a Delaware corporation for an Alabama resident. Therefore, Barclays has shown the underlying contract evidences a transaction that affects interstate commerce. *See Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 38-39, 100 S. Ct. 2009, 64 L. Ed. 2d 702 (1980) ("[B]anking and related financial

activities are of profound local concern . . . . Nonetheless, it does not follow that these same activities lack important interstate attributes.").

Finally, the broad language of the arbitration agreement covers Plaintiff's claims and she does not dispute this. *See cf. AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651, 106 S. Ct. 1415, 1419, 89 L. Ed. 2d 648 (1986) (quoting *Warrior & Gulf*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1352-53, 4 L. Ed. 2d 1409 (1960)) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

Therefore, Barclays has made a preliminary showing that an arbitration agreement exists that covers Plaintiff's claims.

**B.     Plaintiff's Challenges to the Arbitration Agreement**

Plaintiff asserts a factual dispute as to whether the parties agreed to arbitration and argues Barclays is collaterally estopped from enforcing the arbitration agreement. Doc. 37 at 2, 7-14.

"The courts recognize three distinct types of challenges to a contract containing an arbitration clause: (1) a challenge to the validity of the arbitration clause standing alone, (2) a challenge to the validity of the contract as a whole, and (3) a challenge to the very existence of the contract." *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444-45 n.1, 126 S. Ct. 1204). "Challenges to the validity of the contract as a whole are for the arbitrator to decide, whereas challenges to the validity of the arbitration clause in particular or to the very existence of the contract must be resolved by the court before deciding a motion to compel arbitration." *Id.* (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444-45 n.1, 126 S. Ct. 1204). "A party may challenge the existence of a contract by alleging that

at least one party never agreed to its terms, that a signatory lacked the authority to commit his principal, or that the signor lacked the mental capacity to assent." *Id.* (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1, 126 S. Ct. 1204).

### i.  **Collateral Estoppel**

Plaintiff argues Barclays previously filed a collection action for the balance on a credit card account against her in Mobile County Small Claims Court and the court entered judgment in her favor because, she asserts, she argued she did not agree to open the account. *Id*.

Under Alabama law, the following elements must be shown for collateral estoppel to apply:

> (1) [T]hat an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions.

*Stewart v. Brinley*, 902 So. 2d 1, 10 (Ala. 2004) (quoting *Biles v. Sullivan*, 793 So. 2d 708, 712 (Ala. 2000)). "Only issues *actually decided* in a former action are subject to collateral estoppel." *Id.* (emphasis in original) (quoting *Leverette ex rel. Gilmore v. Leverette*, 479 So. 2d 1229, 1237 (Ala. 1985)). "The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication." *Id.* (citing *Adams v. Sanders*, 811 So. 2d 542, 545 (Ala. Civ. App. 2001)).

The prior adjudication to which Plaintiff refers is the order that was entered by the small claims court after the collection action was tried, which reads as follows: "This matter came before the Court on July 3, 2019 with [Barclays's] attorney J. Teague, [Ms. Dodson], and [Ms. Dodson's] attorney K. Riemer appearing in court. Trial occurred on the merits of this case[.] Judgment is hereby entered in favor of [Ms. Dodson]." Doc. 58-13 at 2. The issue before the Court is whether an enforceable agreement to arbitrate exists between Plaintiff and Barclays, and based on the small claims court's order and without additional context, this Court cannot determine whether that

identical issue was litigated and its resolution was necessary to the prior judgment. Therefore, the Court finds Barclays is not collaterally estopped from enforcing the arbitration agreement.

### ii.     Meeting of the Minds

Plaintiff argues there was not a meeting of the minds as to the terms of the credit card agreement. Doc. 37 at 13-14.

"[O]ne of the elements of a valid contract is an agreement among the parties as to its terms, in other words a meeting of the minds." *Marvin's, Inc. v. Robertson*, 608 So. 2d 391, 393-94 (Ala. 1992) (citing *Farmers & Merchs. Bank of Centre v. Hancock*, 506 So. 2d 305, 310 (Ala. 1987)). "An acceptance is required to be identical with the offer; otherwise, there is no meeting of the minds and no agreement." *Ex parte Wright*, 443 So. 2d 40, 42 (Ala. 1983) (citing *Smith v. Chickamauga Cedar Co.*, 263 Ala. 245, 82 So. 2d 200 (Ala. 1955)). The Alabama Supreme Court recognizes "[t]he purpose of a signature on a contract is to show mutual assent," and "ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby." *Jones v. Jones*, 236 So. 3d 119, 123 (Ala. 2014) (internal quotation marks and citations omitted). In this case, it is undisputed Plaintiff signed the credit-card agreement.

If there is a dispute as to whether a contract that includes an arbitration agreement is signed:

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. *See T & R Enters. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980). Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*. *See Prima Paint* [*Corp. v. Flood & Conklin MFG. Co.*], 388 U.S. [395,] 403-404, 87 S. Ct. [1801,] 1806[, 18 L. Ed. 2d 1270 (1967)]. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests. *Id.*

> The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate*. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to [the FAA]. If a party has not signed an agreement containing arbitration language, such a party may have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language. *See Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986) (per curiam) ("Where the allegation is one of . . . ineffective assent to the contract, the issue [of arbitrability] is not subject to resolution pursuant to an arbitration clause contained in the contract documents.").

*Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (emphasis in original) (footnote omitted).

Since it is undisputed Plaintiff signed the credit card agreement, the parties have presumptively agreed to arbitrate their dispute, so Plaintiff's argument that there was not a meeting of the minds challenges the validity of the contract as a whole and is an issue for the arbitrator to decide.

### iii.   Condition Precedent

Plaintiff argues her reservation that she would complete the forms and would later inform the sales department when the forms could be submitted was a condition precedent that never occurred. Doc. 37 at 13-14.

The Alabama Supreme Court has stated a condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Lemoine Co. of Ala., L.L.C. v. HLH Constructors, Inc.*, 62 So. 3d 1020, 1025 n.5 (Ala. 2010) (quoting *Condition Precedent*, BLACK'S LAW DICTIONARY (8th ed. 2004)). Further, a condition precedent is an affirmative defense. *See Winkleblack v. Murphy*, 811 So. 2d 521, 529 (Ala. 2001). "[I]n the absence of an agreement to the contrary, . . . issues of procedural arbitrability, i.e., whether

prerequisites such as time limits, notices, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85, 123 S. Ct. 588, 592, 154 L. Ed. 2d 491 (2002) (internal quotation marks and citations omitted). Therefore, Plaintiff's condition-precedent argument does not challenge the existence, but the validity of the contract as a whole, and is an issue for the arbitrator to decide.

Insofar as Plaintiff's arguments could be characterized as fraudulent behavior that was used to procure her signature on the credit card agreement, the Eleventh Circuit has noted the distinction between the two (2) types of relevant fraud:

> As noted by one of our district courts,
>
> Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action. On the other hand, [f]raud in the factum occurs when a party procures a[nother] party's signature to an instrument without knowledge of its true nature or contents.

*Solymar Invs., Ltd. v. Banca Santander, S.A.*, 672 F.3d 981, 994 (11th Cir. 2012) (citations omitted). "The primary difference between the two species of fraud claims lies in the parties' understanding of the contract into which they are entering. *Id.* at 995; *see also, e.g., Cancanon*, 805 F.2d 998. "Compared to fraud in the inducement, fraud in the factum occurs only rarely, as when a blind person signs a mortgage when misleadingly told that the paper is just a letter." *Fraud, fraud in the factum*, BLACK'S LAW DICTIONARY (11th ed. 2019).

The difference between the two (2) types of fraud is further illustrated in *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F2d 998 (11th Cir. 1986). In *Cancanon*, the non-English speaking plaintiffs alleged their English-speaking financial advisor told them they were signing an agreement to open a money-market account when, in fact, the contract that they signed was a

security-account agreement that allowed Smith Barney, Harris, Upham & Co. ("Smith Barney") representatives to trade securities on the plaintiffs' behalf. *Id.* at 999. The plaintiffs signed the agreement and suffered substantial losses from Smith Barney's subsequent securities trades and associated fees. *Id.* The plaintiffs sued Smith Barney, which moved to compel arbitration under the terms of the parties' agreement. *Id.* at 998. The Eleventh Circuit agreed with the district court when it denied the motion to compel arbitration because of the "misrepresentation of the character or essential terms" of the proposed contract which meant "assent to the contract [was] impossible." *Id.* at 1000.

The Eleventh Circuit has also noted other instances of fraud in the factum: "forgery of signature, physical coercion, and the like." *Solymar Invs., Ltd.*, 672 F.3d at 995 (citing *In re Arbitration Between Nuclear Elec. Ins. Ltd.*, 926 F. Supp. 428, 434 (S.D.N.Y. 1996)).

Here, Plaintiff does not claim she could not understand the terms of the credit card agreement, the agreement was different from what she thought she was signing, her signature was forged, or she was physically coerced. Therefore, any potential argument that Plaintiff was fraudulently induced into signing the contract would challenge the validity of the credit card agreement as a whole and would be an issue for the arbitrator to decide.[2]

---

2   A successful fraud in the factum claim makes the underlying contract <u>void ab initio</u>, *Baumann v. Savers Fed. Sav. & Loan Ass'n*. 934 F.2d 1506, 1516 (11th Cir. 1991) ("Fraud in the factum renders an instrument entirely void . . . ."), whereas a successful claim for fraud in the inducement only makes the underlying contract voidable. *See Fed. Sav & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558, 1565 (11th Cir. 1991) "Fraud in the inducement . . . render[s] the instrument merely voidable and thus capable of transfer."). Of the two, only voidable contracts are subject to rescission but still create legal obligations. *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001). This distinction is therefore crucial to determining whether a contract exists for purposes of arbitration. *But cf. Buckeye Check Cashing*[*, Inc.*], 546 U.S. at 440 (begging the question whether that distinction still exists).

### C. Dismissal Versus Stay

Finally, as to whether the Court should dismiss or stay this matter pending the arbitration of Plaintiff's instant claims, as requested by Barclays, the FAA provides the federal courts "shall on application of one of the parties stay" a proceeding where any issue in that proceeding is referable to arbitration. 9 U.S.C. § 3; *see also Caley,* 428 F.3d at 1369 (emphasis in original) ("[T]he FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding 'is referable to arbitration under an *agreement in writing* for such arbitration… .'"); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.").

Therefore, the Court will deny Barclays's request to dismiss this matter, but grant its alternative request to stay this matter pending arbitration.

### V. CONCLUSION

Accordingly, it is hereby **ORDERED** as follows:

(1) Barclays's Renewed Motion to Compel Arbitration and Dismiss, or in the Alternative, Compel Arbitration and Stay Proceedings (Doc. 28) is **GRANTED in part and DENIED in part**. The motion is granted as to its requests to compel arbitration and stay this matter, but denied as to its request to dismiss this matter;

(2) This matter is **STAYED** pending the outcome of arbitration, and the Clerk of Court

---

*Solymar Invs., Ltd.*, 672 F.3d at 994 n.13.

is **DIRECTED** to place this matter on the administratively closed docket; and

  (3) The parties are **ORDERED** to file with the Court a joint notice within seven (7) days of the completion of arbitration.

  **DONE** and **ORDERED** this 9th day of September 2020.

          /s/ Terry F. Moorer
          TERRY F. MOORER
          UNITED STATES DISTRICT JUDGE